In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-2083

LORA J. WHEATLEY,

*Plaintiff-Appellant*,

*v.*

FACTORY CARD AND PARTY OUTLET,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 3:11-cv-03414-SEM-EIL— **Sue E. Myerscough**, *Judge.*

ARGUED NOVEMBER 30, 2015 — DECIDED JUNE 13, 2016

Before ROVNER and WILLIAMS, *Circuit Judges* and SHAH, *District Judge.**

ROVNER, *Circuit Judge.* Lora Wheatley worked for Factory Card and Party Outlet ("Factory Card") from 1996 until her employment was terminated on July 11, 2009, for failure to

---

* Hon. Manish S. Shah of the Northern District of Illinois, sitting by designation.

report to work. Wheatley filed an action against Factory Card alleging that it violated the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., when it terminated her employment. The district court granted Factory Card's motion for summary judgment, and Wheatley appeals.

The facts underlying this appeal are set forth in detail in the district court's orders in this case. In March 2009, Wheatley injured her foot in an incident at her home. She was unable to work for several days, but returned to work on March 27 with a note from her primary care physician, Dr. James A. Bogan, stating that she could work "without restrictions." At the end of her shift that day, however, Wheatley could not walk and she returned to Dr. Bogan. He provided a note indicating that Wheatley should not work for one week, and recommended that she see Dr. Karolyn Senica, an orthopedist.

Wheatley was off work for the ensuing months because of the injury. In April 2009, Factory Card sent her a letter acknowledging that she had requested leave under the Family and Medical Leave Act (FMLA) beginning April 8, and stating that she had 9.3 of her 12 weeks of FMLA leave remaining. In that letter Factory Card also asked Wheatley to have her physician fill out a "Certification of Healthcare Provider for Employee's Serious Health Condition" form and return it within 15 days. Finally, Factory Card provided Wheatley with the forms necessary should she choose to seek disability benefits through Aetna Insurance.

Over the next three months, Wheatley had numerous appointments with Dr. Senica and with Dr. Jeffrey Fleischli, a podiatrist at the Foot & Ankle Associates of Central Illinois.

Although Wheatley's FMLA leave was set to expire on June 13, 2009, Factory Card provided her with four additional weeks of leave, lasting until July 11, 2009. It also informed her that if she could not return to work when that time period expired, her employment would be terminated but that she would be eligible for rehire by the company if she subsequently recovered from her foot injury.

On June 22, Wheatley was seen once again by Dr. Senica, who issued a note to Wheatley providing that she could return to work on July 6, 2009, with no restrictions. Wheatley disagreed with that assessment and sought a second opinion from Dr. Fleischli on July 1, 2009. Dr. Fleischli ultimately provided a different assessment of her medical status which was reflected in the Aetna Attending Physician Statement entered into the record. In that statement, dated July 8, 2009, Dr. Fleischli checked a box indicating that Wheatley had "No ability to work. Severe limitation of functional capacity; incapable of minimal activity." In response to a form question as to what medical restrictions are placed on the patient, Dr. Fleischli wrote "immobilization." He further noted on the form that Wheatley would "need to be absent from work due to a disability beginning on July 1, 2009 and ending on August 15, 2009.

Although that form indicated that Wheatley would not be able to return to work until August 15, Wheatley submitted an affidavit recounting a conversation with Dr. Fleischli which would have allowed her to return before her FMLA leave expired on July 11. According to Wheatley, in her July 1 visit with Dr. Fleischli she asked him if she could return to work by

July 11 and he told her that she could return to work if her foot were immobilized in a medical boot.

Wheatley contends that she informed Cheryl Cole, Factory Card's Regional Resources Manager, that she would need an additional two weeks off of work, but was informed that if she could not return by July 11 she would be terminated although eligible for rehire. Wheatley then informed her immediate supervisor, Foster Bliss, that she would be able to return to work wearing a walking boot by that time, but Bliss was doubtful that such an accommodation would be allowed. On July 2, Cole sent a letter to Wheatley following up on their conversation regarding the July 11 deadline for her return to work, and requesting that Wheatley have her physician fill out a Fitness for Duty Certification which was enclosed with the letter. That form contained spaces for the physician to include the date on which the employee could return to work, whether the employee would have any work restrictions and how such restrictions would relate to time and duties. Upon receiving that letter, Wheatley called Cole and informed Cole that Dr. Fleischli indicated she could return to work wearing a walking boot, but Cole stated that it would not be possible because Wheatley needed to be able to climb a ladder to do her job. Concluding that Factory Card would not allow her to return to work with the boot, Wheatley chose not to return the certification form or provide any other written documentation regarding her ability to return to work by July 11. She instead applied for disability benefits using the Aetna Attending Physician Statement discussed above, and Aetna determined that she was totally disabled from her occupation. Wheatley then filed this lawsuit claiming that Factory Card violated the ADA in

failing to accommodate her disability in that it should have allowed her to return to work with a medical boot immobilizing her foot and to delegate to other employees the tasks requiring the use of the ladder. Factory Card disputes Wheatley's version of events, contending that Wheatley did not request any accommodations or indicate that she could return with a medical boot, but concedes that we must view the facts in the light most favorable to Wheatley as the non-moving party.

Factory Card filed a motion for summary judgment in the district court, arguing that Wheatley failed to demonstrate that she was a qualified individual under the ADA because she did not allege facts showing that she could perform the essential functions of the job with or without reasonable accommodations. It argued that Wheatley was not "released" to work on the date of her request for an alleged accommodation, July 7, or on the date of termination, July 11, and therefore could not perform an essential function of work—regular attendance. The district court denied that request for summary judgment. The court held that Wheatley had alleged sufficient evidence to survive summary judgment as to whether she was a qualified individual. Specifically, the court declared that deposition or trial testimony from Dr. Fleischli would clarify what he told Wheatley as to her ability to return to work and what was meant by the requirement of immobilization. The court further indicated that the competing conclusions of Drs. Fleischli, Bogan and Senica indicated issues of fact as to her ability to return to work.

Following the district court's denial of the motion for summary judgment, Factory Card filed a motion in limine to

bar Dr. Fleischli from testifying as an expert witness at trial because Wheatley had disclosed him only as a lay witness and not as an expert witness as required by Federal Rule of Civil Procedure 26(a)(2). The district court granted Wheatley leave to file amended witness disclosures to disclose Dr. Fleischli as an expert witness in compliance with that Rule, if Wheatley would also present a detailed description as to what Dr. Fleischli's testimony would be at trial. Wheatley, however, responded by filing a notice stating that she would not be calling Dr. Fleischli as a witness at all.

In light of that revelation, Factory Card filed a Renewed Motion for Summary Judgment. Wheatley opposed that motion, contending that her testimony alone as to her ability to return to work with a walking boot, based on her experience using the boot at home, sufficed to raise an issue of fact. The district court rejected that argument and granted summary judgment in favor of Factory Card. The court stated that in most cases the question as to whether a person can perform a job function with a reasonable accommodation is an inherently medical question which requires expert testimony. Here, the court noted that the relevant question is whether Wheatley's foot could medically withstand the pressure and exertion of performing her job in a walking boot. For that question, the court believed that expert testimony was necessary. The court noted that the record contained releases by Drs. Bogan and Senica, which would indicate that Wheatley could work without restrictions and therefore was not even disabled under the Act, and the Attending Physician's Statement by Dr. Fleischli stating that Wheatley had to be immobilized and could not return to work until August 15, 2009. All of those

statements were inconsistent with Wheatley's contention that she could return to work on July 11 only if allowed to wear a walking boot and allowed to forego the duty of climbing the ladder.

We will not consider Dr. Senica's release of Wheatley, because the court recognized that Dr. Senica was not disclosed as an expert witness and would therefore not be permitted to testify in that capacity. The parties on appeal do not challenge that determination, and neither party relies on Dr. Senica's release for their arguments to this court. Regarding the statement by Dr. Fleischli, the court held that the statement had been part of the record without objection for over a year and was admissible. Wheatley's testimony that she could return to work with the use of a medical boot thus would conflict with the only medical evidence, and the court determined that such testimony was insufficient to survive summary judgment.

Wheatley challenges that determination on appeal, but as a preliminary matter she contends that the court erred in entertaining the renewed motion for summary judgment at all. Although Wheatley concedes that the renewed motion was timely filed, she contends that the earlier, initial motion for summary judgment was filed nearly a year after the initial deadline to file dispositive motions in the scheduling order, and that the district court erred in determining that good cause existed to modify that scheduling order. See Fed. R. Civ. P. 16(b)(4) (providing that a scheduling order may only be modified for good cause and with the judge's consent). The first problem with this argument is that the challenged decision—to allow the motion for summary judgment—resulted in the denial of Factory Card's request for

summary judgment. Therefore, Wheatley has no basis to contest the decision to allow that motion. Wheatley contends that if the court had determined that Factory Card lacked good cause to file that motion, then the subsequent renewed motion for summary judgment based on her failure to include Dr. Fleischli as a witness would be untimely as well. That argument is too attenuated. The basis for the renewed motion was Wheatley's decision to withdraw Dr. Fleischli as a witness, and that is a basis for allowing the renewed summary judgment motion that is entirely independent of the argument for the initial summary judgment filing. The granting of the renewed motion for summary judgment is the only issue before this court, and Wheatley has not challenged the court's decision to allow that motion. Moreover, even if we considered the court's decision to allow the initial summary judgment motion, Wheatley's challenge is without merit. We review such determinations only for abuse of discretion, and Wheatley has failed to meet that standard here. See *Adams v. City of Indianapolis*, 742 F.3d 720, 734 (7th Cir. 2014); *Riggins v. Walter*, 279 F.3d 422, 427 (7th Cir. 1995). The discovery cut-off in the scheduling order was modified by agreement of the parties to allow Factory Card to take the deposition of Wheatley after settlement efforts failed. In light of the representations in that deposition, Factory Card requested leave to file a motion for summary judgment. That request was filed in a timely manner within approximately one month following the deposition, and the court did not abuse its discretion in finding good cause and modifying the scheduling order.

We turn, then, to the merits of the summary judgment motion. In granting the renewed motion for summary judg-

ment, the court held that Wheatley presented insufficient evidence to allow a jury to find that she was a qualified individual with a disability under the ADA. That determination is consistent with our caselaw.

The ADA prohibits discrimination by an employer against a "qualified individual on the basis of disability." 42 U.S.C. § 12112(a). A "qualified individual" is an individual who "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). In determining whether a person is a qualified individual, we apply a two-step process. First, we determine whether the person satisfies the prerequisites for the position, such as possessing the proper educational background, employment experience, skills, or licenses. *Stern v. St. Anthony's Health Center*, 788 F.3d 276, 285 (7th Cir. 2015). We then consider "'whether or not the individual can perform the essential functions of the position held or desired, with or without reasonable accommodation.'" *Id.*, quoting *Basith v. Cook County*, 241 F.3d 919, 927 (7th Cir. 2001). Only the second prong of that two-part process is at issue here.

Wheatley challenges the district court's grant of summary judgment, which was based on the court's determination that she failed to demonstrate sufficient evidence for a jury to conclude that she was a qualified individual. In her brief to this court, Wheatley acknowledges that her evidence was limited to her own personal observations. Although she stated in her affidavit that Dr. Fleischli had informed her that the use of a medical boot would allow her to return to work by the July 11 deadline, she chose not to present evidence from Dr. Fleischli to that effect, affirmatively withdrawing him from her witness

list. Therefore, the district court was presented only with her affidavit statements, which essentially consisted of her statements that she had been wearing the medical boot for two months, and was aware of the job duties and what her limitations would have been if she were allowed to return to work. She contends that such testimony would be sufficient to allow a jury to conclude that she could perform the essential duties of the position if allowed to wear a medical boot in the workplace and if able to delegate the task of climbing the ladder to other employees. She contends that the court erred in requiring expert testimony in order for her to meet her burden. We need not consider whether climbing a ladder was an essential function of the position, because Wheatley has failed to demonstrate that she was capable of returning to work if allowed to wear a medical boot.

"In response to an employer's motion for summary judgment, it is the plaintiff's burden to produce evidence sufficient to permit a jury to conclude that she would have been able to perform the essential functions of her job with a reasonable accommodation." *Basden v. Professional Transp. Inc.*, 714 F.3d 1034, 1037 (7th Cir. 2013). At the outset, we note that Wheatley is correct that a plaintiff does not necessarily need to produce expert testimony in order to demonstrate that she is a qualified individual. See *EEOC v. AutoZone, Inc.*, 630 F.3d 635, 643-44 (7th Cir. 2010) (medical testimony not required to establish that a person has a disability under the ADA requiring accommodation). The need for such evidence will depend upon the facts in each individual case. *Id.* at 643. The problem for Wheatley, however, is not that she failed to produce a

certain type of evidence; it is that the evidence she presented is insufficient to meet her burden.

Our cases are instructive as to what evidence is sufficient to meet that burden. In *Basden*, the plaintiff had been told that she likely had multiple sclerosis, and was awaiting an appointment with a specialist. *Basden*, 714 F.3d at 1037. Her request for leave to address the problem was denied by her employer, and her employment was terminated. *Id.* In court, she presented evidence of her work performance with a subsequent employer, but it was of short duration and was insufficient to support a finding that a combination of leave and medication would have enabled her to work on a regular basis. *Id.* at 1037-38. She did not present medical evidence regarding the effectiveness of her treatment. *Id.* at 1038. Moreover, in her deposition, she testified only that at the time she requested leave, she had hoped that a diagnosis from a specialist and the use of prescription medication would allow her to return to work. *Id.* We held that the evidence was insufficient to support a factual finding that she was a qualified individual. At the time of her termination, "she had no final diagnosis, no prescribed treatment, and no anticipated date by which she could have been expected to attend work regularly even if she had been granted leave." *Id.* The *Basden* court analogized her case to that in *Weigel v. Target Stores*, 122 F.3d 461, 468-69 (7th Cir. 1997), in which we found that an affidavit from the plaintiff's psychiatrist stating that there was a "good chance" that she could return to work with treatment was too conclusory and uninformative to allow a jury to determine that an accommodation would allow the plaintiff to perform her job. In both *Weigel* and *Basden*, the plaintiff failed to meet her

burden of producing evidence sufficient to permit a jury to conclude that she would have been able to perform the essential functions of her job with a reasonable accommodation.

We were presented with a similar situation in *Stern v. St. Anthony's Health Center*, 788 F.3d 276 (7th Cir. 2015). In *Stern*, the plaintiff had been the chief psychiatrist at an acute-care facility and was terminated based on an evaluator's opinion that he had short-term memory deficits which rendered him unfit for duty. *Id.* at 279. The evaluator also opined that strategies to compensate for Dr. Stern's memory deficits and alteration of duties possibly would allow him to perform his remaining duties effectively. *Id.* at 289. We held that such evidence was insufficient to meet his burden, characterizing it as similar to the plaintiffs in *Weigel* and *Basden* who "relied upon a conclusory and untested opinion/hope that the proposed treatment/accommodation would enable them to perform the essential functions of their jobs." *Id.* Dr. Stern could have sought additional medical treatment or testing after his discharge and obtained non-speculative, non-conclusory evidence that a proposed accommodation would have allowed him to adequately perform his job, but he did not do so. *Id.* We held that the evaluator's speculative, untested suggestions were insufficient to satisfy the burden. *Id.*

The evidence presented by Wheatley is similarly insufficient. Wheatley states that she was able to return to work full time if she would have been allowed to use a medical boot but she presents no evidence that the boot was an appropriate treatment for her injury or that it would have allowed her to walk and stand sufficient to perform her job. By choosing to

eliminate Dr. Fleischli as a witness, Wheatley chose to forego any medical evidence that a boot was prescribed for her as well as any medical evidence as to the relief that such a device would provide.

She instead provided her own statement that she had used the medical boot for the past two months, and that she was familiar with the requirements of the job and could fulfill those requirements as long as she wore the medical boot. But her affidavit testimony provides scant support for that conclusion, and in fact indicates that the medical boot did not sufficiently ameliorate her condition to allow the performance of her job. Wheatley's affidavit contains conclusory statements that she could perform the job with the medical boot, but the facts regarding her abilities when wearing the boot do not support that conclusion. In her affidavit, she stated that when she started wearing the medical boot, "[w]hile my walking was more challenging than it had been in the past, I was able to walk around." She indicated that she started wearing the medical boot on April 28, 2009. As of July 1, 2009, when wearing the boot she "was able to walk or stand around for a couple of hours at a time," but "was not able to walk and stand for eight continuous hours." She acknowledged that her "responsibilities as manager did require [her] to be on [her] feet for a good number of hours in a shift," but declared, "[t]hat having been said, there was also a decent amount of time when I was not on my feet." That is the kind of conclusory and untested opinion/hope that we have repeatedly deemed insufficient to meet the burden on summary judgment. Even after two months of wearing the medical boot, she could walk or stand for only a couple of hours at a time. There is no

evidence whatsoever as to how much recovery time she needs in order to be able to walk or stand for additional hours, nor is there any suggestion that her job could be performed by a person who could walk or stand for only two hours in a shift. Her testimony that she must be on her feet for a "good number of hours" but that there was a "decent amount of time" when she did not need to be on her feet is too general to provide any guidance to a jury. There is no evidence, medical or otherwise, that the use of the medical boot would allow her to stand or walk a sufficient amount of time to perform the duties of her job.

In fact, in the affidavit she acknowledges that her ability to walk and the amount of time she could spend on her feet was limited in July of 2009. She noted that "[t]he boot did not allow me to work as well as I had in the past or as well as most people, however, it did allow me to walk and/or stand for a number of hours at a time." Therefore, the evidence that she could fulfill the job requirements consists solely of conclusory statements by Wheatley, but her actual recitation of her abilities with the medical boot indicated that she was limited to walking and standing for only a couple of hours at a time and that she was not able to work as well as most people even with the boot.

Wheatley presented no medical evidence to indicate the utility of the medical boot or her capabilities in the boot. Nor did she present evidence that her performance subsequent to the termination illustrated her capability to perform the job, such as evidence that either before or after the date of termination she was able to engage in physical activity of the kind and duration required for the job. Instead, by her own admission,

she chose to present only her personal observations as evidence to demonstrate that she was a qualified individual. Such evidence can be sufficient to survive summary judgment, but here Wheatley's statements as to her own abilities would not allow a jury to conclude that she could perform the essential functions of the job.

When Wheatley first returned to her job after the injury with her physician's release, she lasted only one day before experiencing pain that required her to take a leave again. There is no evidence that Wheatley was ready to return this second time, and in fact after the termination she sought and obtained disability benefits through Aetna based on its determination that she was totally disabled and could no longer perform the material duties of her Store Manager position.

That conclusion is consistent with the Aetna Attending Physician Statement by Dr. Fleischli in the record, in which he indicated that she had no ability to work and would need to be absent until August 15, 2009. Wheatley argues that the district court erred in considering that document because it is hearsay. In granting summary judgment, a district court may consider any evidence that would be admissible at trial. *Widmar v. Sun Chem. Corp.*, 772 F.3d 457, 460 (7th Cir. 2014). The evidence need not be admissible in form, but must be admissible in content, such that, for instance, affidavits may be considered if the substitution of oral testimony for the affidavit statements would make the evidence admissible at trial. *Winskunas v. Birnbaum*, 23 F.3d 1264, 1267-68 (7th Cir. 1994). Here, the court could properly determine that the Attending Physician Statement was admissible. We have upheld the admissibility of a health care provider's medical certification under the

business records exception, Fed. R. Evid. 803(6), and the court could properly determine that Factory Card could provide the foundation for admission of such evidence at trial. See *Hansen v. Fincantieri Marine Group, LLC*, 763 F.3d 832, 840 (7th Cir. 2014). In fact, Wheatley raised no objection to that document when it was included in the defendant's statement of undisputed facts.

Dr. Fleischli's Attending Physician Statement thus was properly considered, and provides evidence that Wheatley was not capable of working at the time of her termination. But as discussed above, even absent that statement, the evidence presented by Wheatley is insufficient to allow a jury to conclude that she could perform the essential duties of the position if permitted to wear the medical boot and forego the ladder duties. Her mere hope or belief, unsupported by evidence supporting those conclusions, is insufficient to permit a jury to conclude that she would have been able to perform the essential functions of her job with a reasonable accommodation. Accordingly, the district court properly granted summary judgment for the defendant.

AFFIRMED